1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10         SOUTHERN DISTRICT OF CALIFORNIA
11

12  GERALD BRANTLEY,                        )    Civil No. 3:12cv540 AJB (JMA)
                                            )
                      Plaintiff,            )    ORDER DENYING MOTION
13  v.                                      )    TO REMAND
                                            )
14  BORG-WARNER MORSE TEC, INC.; ET         )
    AL,                                     )    [Doc. No. 15]
15                                          )
                      Defendants.           )
16  _____       )

17        The Plaintiff filed a motion to remand, Doc. No. 15, on March 27, 2012.  The Defendants filed

18  an opposition, Doc. No. 25, and the Plaintiff filed a reply, Doc. No. 27.[1] The hearing set by Judge

19  Moskowitz for April 20, 2012 was vacated by Judge Battaglia, Doc. No. 24, and upon review of the

20  parties moving papers, the Court finds this motion appropriate for submission on the papers without oral

21  argument pursuant to Civil Local Rule 7.1.d.1.  For the reasons set forth below, the Plaintiff's motion to

22  remand, Doc. No. 15, is hereby DENIED.

23                                  ***Background***

24        The Plaintiff, Gerald Brantley, originally filed this action in San Diego Superior Court on

25  January 30, 2012.  Plaintiff alleges that "he developed mesothelioma as a result of exposure to CBS's

26  asbestos-containing Westinghouse turbines while serving in the United States Navy." (Plaintiff's

27

28        [1] The Plaintiff also separately filed evidentiary objections, Doc. No. 27-7, without leave of Court
    as a separately filed motion, which was subsequently stricken for non-compliance.  *See* Doc. No. 28.

1  Memorandum, p. 2). He brought the instant action against Westinghouse "seeking damages for

2  [Westinghouse's] failure to warn and design defect under state law product liability theories." *Id.*

3  According to his complaint, the only ship on which he served while in the Navy was the USS Fort

4  Marion (Plaintiff's Complaint ("Complaint"), Exh. A), which was outfitted with Westinghouse

5  propulsion turbines that were later insulated with asbestos-containing materials by other parties.

6      The Plaintiff has expressly disclaimed any cause of action or recovery against Defendants for

7  any injuries resulting from exposure to asbestos caused by any Defendant acting at the direction of an

8  officer of the United State Government.

9      Defendants removed the case to this Court on March 2, 2012, pursuant to 28 U.S.C. §

10  1442(A)(1). [Doc. No. 1.] On March 27, 2012, the Plaintiff filed a motion to remand this action to state

11  court. [Doc. No. 15.]

12                                    ***Discussion***

13      Plaintiff asserts two main grounds for remand: (1) that the removal was precluded by a

14  disclaimer that purports to defeat removal; and (2) that this Court lacks jurisdiction because Westing-

15  house cannot prove the elements of federal officer jurisdiction as set forth in *Mesa v. California*, 489

16  U.S. 121 (1989).

17  ***I.    Legal Standard on Motion to Remand***

18      Defendant removed of this case pursuant to § 1442(a)(1), under which a state civil action may be

19  removed to federal court by "any officer . . . of the United States or of any agency thereof, sued in an

20  official capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). A party seeking

21  removal under § 1442(a)(1) must demonstrate: (1) that it is a person within the meaning of the statute,

22  (2) that it acted under the direction of a federal officer, (3) a causal nexus between plaintiffs' claims and

23  acts it performed under color of federal office, and (4) a colorable federal defense to plaintiffs' claims.

24  *Mesa v. California*, 489 U.S. 121, 124-25, 134-35, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989); *Fung v. Abex*

25  *Corp.*, 816 F.Supp. 569, 571-72 (N.D.Cal.1992).

26      Generally, there is a strong presumption against removal jurisdiction and, as a result, removal

27  statutes are to be strictly construed against removal and defendants have the burden of establishing that

28  removal jurisdiction is proper. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir.1992). Federal

1   officer removal, however, is an exception to this general rule. Because the federal government can act

2   only through its officers and agents, it would be difficult to find those to act on its behalf if it did not

3   guarantee its officers and agents access to a federal forum. *Durham v. Lockheed Martin Corp.*, 445 F.3d

4   1247, 1253 (9th Cir.2006) (citing *Tennessee v. Davis*, 100 U.S. 257, 263, 25 L.Ed. 648 (1880)).

5   Therefore, "when federal officers and their agents are seeking a federal forum, we are to interpret

6   section 1442 broadly in favor of removal." *Id.* at 1252.

7   **II.    *Plaintiff's Disclaimer Does Not Negate Federal Jurisdiction***

8           In his state court complaint, Mr. Brantley expressly disclaims "any cause of action or claim for

9   injuries caused by any exposure to asbestos dust that caused by any acts or omissions of a party

10  defendant committed at the direction of an officer of the United States Government." (Complaint,

11  attached as Exhibit "A" to the Declaration of Rebecca A. Cucu, p. 3, ¶ 4:18-21.)  As a result of this

12  disclaimer, the Plaintiff argues that Defendants' removal to this Court is unwarranted because there is no

13  subject matter jurisdiction. However, despite this disclaimer, the Plaintiff still seeks damages arising out

14  of his exposure to asbestos in and around the Westinghouse turbines produced by Defendants while

15  serving in the United States Navy aboard the USS Fort Marion.  As explained below, Defendants can

16  assert a federal defense. "Because removals pursuant to the federal officer removal statute are premised

17  on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither

18  Plaintiff's disclaimer nor its characterization of their claims are determinative." *Oberstar v. CBS Corp.*,

19  2008 U.S. Dist. LEXIS 14023, at *8 (C.D. Cal. Feb. 11, 2008) (citing *Machnik v. Buffalo Pumps Inc.*,

20  506 F. Supp.2d 99, 103 n. 1 (D. Conn. 2007)). Based upon the foregoing, the Court finds that the

21  Plaintiff's disclaimer is not determinative of whether federal jurisdiction is proper.

22  **III.   *Removal Is Proper Because Defendants Have Satisfied the Mesa Factors***

23          In order to obtain removal under § 1442(a)(1), Defendants must demonstrate: (1) that they are

24  person(s) within the meaning of the statute, (2) that they acted under the direction of a federal officer,

25  (3) a causal nexus between Plaintiffs' claims and acts they performed under color of federal office, and

26  (4) a colorable federal defense to Plaintiffs' claims. *Mesa v. California*, 489 U.S. 121, 124-25, 134-35,

27  109 S.Ct. 959, 103 L.Ed.2d 99 (1989); *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-72 (N.D. Cal.1992).

28  *///*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### A.   Westinghouse Is a Person Within the Meaning of the Statute

Defendants must demonstrate that it qualifies as a person within the meaning of the statute in order to seek removal pursuant to it.  A "'purely legal person such as a corporation could be engaged in activities that amount to the implementation of a federal policy under the direction of a government officer' such that state court suits against those corporations could disrupt the execution of federal law." *Fung*, 816 F. Supp. at 572 (quoting *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 946 (E.D.N.Y. 1992)). Therefore, Westinghouse, as a corporation, is a person within the meaning of 28 U.S.C. § 1442(a)(1).

### B.   Westinghouse Acted Under the Direction of a Federal Officer

The Defendants must show that Westinghouse's actions were sufficiently controlled by a federal officer such that Westinghouse's liability arising from such actions needs to be adjudicated in federal court. Defendants must show that the Navy had "direct and detailed control" over it. *Id.* In *Fung*, direct and detailed control was shown where the federal government contracted with the defendant to build submarines, monitored defendant's performance, ensured complete conformity by defendant with design specifications, and "required the defendant to construct and repair the vessels in accordance with the applicable and approved specifications incorporated into the contracts." *Id.* at 572-73.

Despite the Plaintiff's contentions to the contrary, the Court finds that the Defendants have provided sufficient evidence to demonstrate that Westinghouse manufactured propulsion turbines for United States Naval ships in compliance with detailed Navy specifications which, during the years in question, required the use of asbestos.  *See* Nov. 23, 2010 Affidavit of James M. Gate ("Gate Aff."), ¶¶ 5-29, attached to the Declaration of Previn A. Wick as "Exhibit A" The Navy specified all relevant aspects of the design of such turbines, including the choice of materials used in their manufacture. (Gate Aff. ¶ 7). Navy officers enforced conformance to those specifications at Westinghouse's plant, and Westinghouse had no ability to deviate from those specifications without Navy approval. (*Id*). The Navy control extended throughout the turbines' manufacture, testing, and acceptance. (*Id* ¶¶ 16-29). Thus, Westinghouse's Navy turbines were not "off-the-shelf" products; Westinghouse custom-designed them to meet exacting Navy specifications, and the Navy accepted them as complying with those specifica-tions only after thorough testing. (*Id* ¶¶ 13,19-20 & 24-29).  This level of control applied equally to

12cv540

warnings, as whether certain equipment used aboard Naval vessels should have warnings, and the content and format of those warnings was determined solely by the Navy. *See* Nov. 26, 2010 Affidavit of Roger B. Home, Jr. RADM USN (Ret.) ("Horne Aff.") at ¶¶ 1, 16-18, 20-22, and 34, attached to the Declaration of Previn A. Wick as "Exhibit B" (stating that Westinghouse could not supply any warnings that the Navy did not specifically authorize or approve because such warnings were subject to detailed Navy design specifications ("MilSpecs") and were closely inspected by Navy officers who rejected any equipment that did not fully comply with its MilSpecs).

Under similar circumstances, other courts have held that there was indeed a direct and detailed control over military contractors. In another asbestos action in the Central District of California, the court reviewed similar declarations and concluded that the declaration "raised 'the inference that [defendant] did not provide a warning concerning the dangers of asbestos because the Navy did not permit any such warning.' " *Oberstar*, 2008 U.S. Dist. LEXIS 14023, at * 12 (quoting *Nesbiet v. General Elec. Co.*, 399 F. Supp.2d 205, 208 (S.D.N.Y. 2005)).

Based upon the foregoing, the Court finds that the Gate and Horne declarations are sufficient to meet Defendants burden of demonstrating direct and detailed control. To demand more evidence than these declarations would "frustrate the purpose of section 1442(a)(1)." *Ballenger v. AGCO Corp.*, 2007 U.S. Dist. LEXIS 47042, at *10-11 (C.D. Cal. June 22, 2007). Therefore, Westinghouse meets its burden of showing direct and detailed control by the Navy and a lack of discretion on Westinghouse's part to place asbestos warnings on the products that they delivered to the Navy.

### C.    There Is a Causal Nexus

Next, Defendants must show that there is a causal nexus between Westinghouse's acts under color of federal office and Plaintiffs' claims. The Plaintiff argues that Defendants have failed to establish a causal nexus between what the Navy allegedly instructed Westinghouse to do and the Plaintiffs' claims for failure to warn against asbestos exposure and design defects under state law product liability theories.  However, as explained above, Westinghouse has provided sufficient evidence to show that it acted under the direct and detailed control of the Navy, and that the Navy prohibited Westinghouse from placing any unauthorized asbestos warnings on its products.. Based upon the foregoing, the Court finds

12cv540

1  that the Defendants have demonstrated a  sufficient causal nexus exists between Westinghouse's actions

2  pursuant to the Navy's control and Plaintiffs' claims.

3          **D.      Defendants Raise a Colorable Federal Defense to the Plaintiff's Claims**

4          Defendants must show that they have a colorable federal defense. *See Mesa*, 489 U.S. at 128;

5  *Fung*, 816 F. Supp. at 573. Pursuant to the *Durham* policy favoring removal for federal officers, a

6  defendant does not need to show a valid or likely successful federal defense, but merely a colorable one.

7  *Id.*; *Durham*, 445 F.3d at 1252. Recognizing that "one of the most important reasons for removal is to

8  have the validity of the defense of official immunity tried in a federal court," the Supreme Court rejected

9  a "narrow, grudging interpretation" of § 1442(a)(1), rejecting the notion that the officer must virtually

10  "win his case before he can have it removed." *Jefferson County v. Acker*, 527 U.S. 423, 431, 119 S.Ct.

11  2069, 144 L. Ed.2d 408 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 23

12  L.Ed.2d 396 (1969)).

13          In this case, the Defendants invoke the military contractor defense, which shields military

14  contractors from state tort law liability for defects in military equipment supplied to the United States

15  when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed

16  to those specifications; and (3) the supplier warned the United States about the dangers in the use of the

17  equipment that were known to the supplier but not to the United States." *Boyle v. United Tech. Corp.*,

18  487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Because the military contractor defense is

19  an affirmative defense, Defendants bear the burden of establishing it. *See Snell v. Bell Helicopter*

20  *Textron, Inc.*, 107 F.3d 744, 746 (9th Cir.1997).

21          The Ninth Circuit held that the military contractor defense exists because:

22                  the military makes highly complex and sensitive decisions regarding the
                    development of new equipment for military usage. Allowing the contrac-
23                  tors who are hired to manufacture that equipment to be sued for the
                    injuries caused by it would impinge unduly on the military's decision
24                  making process.

25  *Id.* at 811. However:

26                  [t]hese same concerns do not exist in respect to products readily available
                    on the commercial market. The fact that the military may order such
27                  products does not make them "military equipment." The products have not
                    been developed on the basis of involved judgements made by the military
28                  but in response to the broader needs and desires of end-users in the private
                    sector.

12cv540

1    *Id.* Therefore, "[w]here the goods ordered by the military are those readily available, in substantially

2    similar form, to commercial users, the military contractor defense does not apply." *Id.* Based on the

3    record before it, the court in *Snell* found that the asbestos insulation sold to the military did not

4    constitute "military equipment" because the insulation was sold on the ordinary commercial market. *Id.*

5    at 812.

6         In the instant case, Westinghouse manufactured propulsion turbines for the Navy, in compliance

7    with detailed Navy specifications which, during the years in question, required the use of asbestos.  *See*

8    Nov. 23, 2010 Affidavit of James M. Gate ("Gate Aff."), pages 5-29, attached to the Declaration of

9    Previn A. Wick as "Exhibit A".  The Navy specified all relevant aspects of the design of such turbines,

10   including the choice of materials used in their manufacture. (Gate Aff. ¶ 7). Navy officers enforced

11   conformance to those specifications at Westinghouse's plant, and Westinghouse had no ability to deviate

12   from those specifications without Navy approval. (*Id*). Navy control extended throughout the turbines'

13   manufacture, testing, and acceptance. (*Id*. ¶¶ 16-29). Thus, Westinghouse's turbines were not

14   "off-the-shelf" products. Westinghouse custom-designed them to meet precise Navy specifications, and

15   the Navy accepted them as complying with those specifications only after thorough testing. (*Id*. ¶¶

16   13,19-20, and 24-29).

17        The Court finds the Plaintiff reliance on *In re Hawaii Federal Asbestos Cases,* for the argument

18   that Defendants are precluded from relying on military contractor defense misplaced.[2] *See* Plaintiff's

19   Reply, Doc. No. 27, at 11-12.  While the Defendants have not necessarily established a valid federal

20   defense, they need not prove so much at this preliminary stage of the proceedings. "Again, to establish

21   the propriety of their removal, defendants must only show a 'colorable' federal defense, not a winning

22   one." *Oberstar*, 2008 U.S. Dist. LEXIS 14023, at *13. In sum, the Defendants have shown that

23   Westinghouse was a person that acted under the direction of a federal officer, there is a causal nexus

24   between its actions and Plaintiffs' claims, and it can assert a colorable federal defense. Therefore, federal

25   officer jurisdiction is proper under § 1442(a)(1).

26   ///

27

28        [2] *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992). The *In re Hawaii* case was an appeal of a jury verdict, which involved the denial of the Defendants' asserted military contractor defense.

12cv540

1

### *Conclusion*

2        For the reasons set forth above, the Plaintiff's motion to remand, [Doc. No. 15], is hereby

3  DENIED.

4        IT IS SO ORDERED.

5

6  DATED:  May 3, 2012

7        _____

8        Hon. Anthony J. Battaglia
         U.S. District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28