1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA GRANDE, individually and as successor-in-interest to THE ESTATE OF GERALD BRANTLEY, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>BORG-WARNER MORSE TEC, INC., et al.,<br><br>Defendants. | CASE NO. 12cv540-GPC(JMA)<br><br>**ORDER DENYING DEFENDANT CRANE CO.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Dkt. No. 195.] |

Before the Court is a motion for summary judgment filed by Crane Co., the sole remaining Defendant in the above-captioned matter. (Dkt. No. 195.) The parties have fully briefed the motion, and the Court held a hearing on the motion on Friday, March 7, 2014. Ethan Horn, Esq. appeared on behalf of Plaintiff and Geoffrey Davis, Esq. appeared on behalf of Defendant Crane Co. Based on a review of the briefs, supporting documentation, oral arguments of counsel, and the applicable law, the Court DENIES Defendant Crane Co.'s motion for summary judgment and GRANTS Defendant Crane Co.'s request to sever the issue of punitive damages for trial.

## PROCEDURAL BACKGROUND

On January 30, 2012, Gerald Brantley ("Decedent") filed an action for negligence, strict liability, false representation, and intentional failure to warn in San

Diego County Superior Court against twenty-nine Defendants. (Dkt. No. 1-1.) Defendant CBS Corporation removed the action to federal court on March 2, 2012. (Dkt. No. 1.) On October 11, 2012, the case was transferred to the undersigned judge. (Dkt. No. 85.)

On February 8, 2013, Gerald Brantley passed away. On April 30, 2013, Plaintiff Lisa Grande ("Plaintiff") filed a first amended complaint for wrongful death. (Dkt. No. 139.) Plaintiff alleges seven causes of action, for: (1) negligence; (2) strict liability; (3) false representation; (4) intentional tort/intentional failure to warn; (5) premises/contractor liability; (6) general negligence; and (7) vicarious liability. (Id.)

Plaintiff has since dismissed a number of Defendants from the above-captioned matter. Only Plaintiff's claims against Defendant Crane Co. remain.

## FACTUAL BACKGROUND

There is no dispute among the Parties regarding the following facts. Decedent Gerald Brantley passed away on February 8, 2013. At the time of his death, Decedent suffered from malignant mesothelioma, a form of cancer linked to exposure to asbestos. Plaintiff Lisa Grande, Decedent's daughter and the successor in interest to the Estate of Gerald Brantley, alleges Decedent was exposed to asbestos from Crane Co.'s products, resulting in the diagnosis of his asbestos-related disease and his eventual death. Specifically, Plaintiff alleges Decedent was exposed to Crane Co.'s products during his career as a Navy machinist.

Decedent served aboard the USS Fort Marion in the United States Navy from approximately 1958 to 1960.[1] The USS Fort Marion was commissioned in January 1946. (Dkt. No. 207-17 at ¶ 20.) As a boilerman, Decedent tended to boilers, pumps,

---

[1] Although Plaintiff's opposition to Defendant Crane Co.'s motion for summary judgment states that Decedent worked aboard the USS Fort Marion "for approximately 3 years beginning in 1958 or 1959," (Dkt. No. 207 at 2), Plaintiff also states that it is "undisputed" that Decedent's claims against Crane Co. are limited to Decedent's service in the Navy from 1958-1960 while aboard the USS Fort Marion. (Dkt. No. 207-17 ¶ 6.)

[12cv540-GPC(JMA)]

and valves located in two boiler rooms aboard the vessel. (Dkt. No. 207-18 ¶ 2.) Decedent performed work on globe valves, gate valves, ball valves, micrometer valves, and steam valves while aboard the USS Fort Marion. (Id. ¶ 3.) Plaintiff's claims as to Decedent's exposure to Defendant Crane Co.'s asbestos-containing products is limited to Decedent's service in the Navy while aboard the USS Fort Marion. (Dkt. No. 207-17 ¶¶ 6, 19.)

In particular, Plaintiff claims that Decedent's work aboard the USS Fort Marion exposed Decedent to asbestos from Defendant Crane Co.'s valves as well as to the internal gasket and packing material associated with the Crane Co. valves.[2] (Dkt. No. 207-17 ¶ 12) (citing Dkt. No. 195-10, Farkas Decl. Ex. 6, Pl. Resp. to Interrog. No. 1 at 6.) Plaintiff focuses her asbestos exposure claims against Crane Co. to Decedent's exposure to Crane Co. valves used in steam applications, because steam valves  "had to be able to withstand the heat associated with these products" and therefore, at the time,  necessarily contained asbestos. (Id.)

A valve is a device which is used to control the flow of liquids and gasses. (Dkt. No. 207-6, Stewart Decl. Ex. G at 85.) As early as 1858 until the mid-1980s, Crane Co. manufactured and sold industrial valves that contained internal material composed or partially-composed of asbestos. (Id. at 86.) Although the industrial valves manufactured by Crane Co. were themselves made of "steel, bronze, and other metals," the valves had enclosed within their metal structure "asbestos-containing gaskets, packing, or discs." (Dkt. No. 207-6, Stewart Decl. Ex. F at 70.) At issue in this case are the asbestos-containing "gaskets" encased within Crane Co. valves which served to prevent metal-to-metal contact and prevent leakage, (Dkt. No. 207-6, Stewart Decl. Ex. I at 108), and asbestos-containing "packing," often in

---

[2]Although Plaintiff's interrogatory response also states that Decedent was exposed to Crane Co. "pumps," Plaintiff has abandoned claims related to Crane Co. pumps. (Dkt. No. 207-17, Pl. Resp. to Def. Crane Co.'s Statement of Undisputed Facts ¶ 12) (mentioning only Crane Co. valves and the packing and gaskets associated with those valves).

rope-like form, wrapped around the internal valve stems and also encased within Crane Co. valves. (Dkt. No. 195-1 at 12.)

As to Decedent's work with steam valves, Decedent testified that each time he disassembled a valve to access the internal bonnet gasket and packing, his work released dust in the air, which Decedent inhaled. (Dkt. No. 207-18 ¶ 4.) It is undisputed that Decedent never himself installed a new Crane Co. valve aboard the USS Fort Marion. (Dkt. No. 207-17 ¶ 33.) However, Plaintiff claims Decedent was exposed to Crane Co.'s asbestos-containing internal gasket and packing material when performing replacement and maintenance work on new Crane Co. valves installed by others aboard the USS Fort Marion. (Dkt. No. 207 at 3.) Decedent testified that he knew the Crane Co. valves he worked on were new for two reasons: (1) because opening the valve to access the internal parts would inevitably leave marks on the valves, nuts, and bolts; and (2) replaced packing glands and gaskets would be clean rather than dry and caked on. (Dkt. No. 207-1, Stewart Decl. Ex. A at 1274:13-1276:10.)

The Parties do not dispute that Crane Co. sold products that contained asbestos prior to 1985. Crane Co. admits that it manufactured and sold valves that contained asbestos components as early as 1858. (Dkt. No. 207-18 ¶ 25) (citing Dkt. No. 201-1, Lannus Decl. Ex. 41). Crane Co. manufactured valves with internal asbestos-containing gaskets and packing material until the late 1980s. (Id.) (citing Dkt. No. 201-1, Lannus Decl. Ex. 45.) Plaintiff has introduced evidence that Crane Co. did not affix warnings regarding the hazards of asbestos to their products until the mid-1980s. (Id.) (citing Dkt. No. 201-1, Lannus Decl. Ex. 40.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett,

477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are

1   for the trier of fact. <u>Anderson</u>, 477 U.S. at 255.

2                                  **DISCUSSION**

3          Crane Co. moves for summary judgment on two grounds, arguing that: (1)

4   Plaintiff cannot prove exposure to Crane Co.'s asbestos-containing products; and

5   (2) Plaintiff has set forth no evidence that Crane Co. knew of the hazards of

6   asbestos at the time of Decedent's alleged exposure to Crane Co. asbestos-

7   containing products as required to support Plaintiff's claim for punitive damages.

8   (Dkt. No. 195-1.)

9          Under California law, "Plaintiffs may prove causation in an asbestos case by

10  demonstrating that the plaintiff's or decedent's exposure to the defendant's

11  asbestos-containing product in reasonable medical probability was a substantial

12  factor in contributing to the aggregate dose of asbestos the plaintiff or decedent

13  inhaled or ingested, and hence to the risk of developing asbestos-related cancer."

14  <u>McGonnell v. Kaiser Gypsum Co.</u>, 98 Cal. App. 4th 1098, 1103 (2002) (citing

15  <u>Rutherford v. Owens–Illinois, Inc.</u>, 16 Cal. 4th 953, 975–76 (1997)); <u>see also</u>

16  <u>O'Neil v. Crane Co.</u>, 53 Cal. 4th 335, 345 (2012) ("To the extent [the decedent] was

17  exposed to dust generated during work on pumps and valves, no evidence was

18  presented that any of the asbestos-containing dust came from a product made by

19  [the defendants].").  In asbestos litigation, a plaintiff must show "exposure to a

20  defendant's product and biological processes from the exposure which result in

21  disease." <u>Lineaweaver v. Plant Insulation Co.</u>, 31 Cal. App. 4th 1409, 1416 (1995).

22         The "proper analysis is to ask [1] whether the plaintiff has proven exposure to

23  a defendant's product, of whatever duration, so that exposure is a possible factor in

24  causing the disease and then [2] to evaluate whether the exposure was a substantial

25  factor." <u>Lineaweaver</u>, 31 Cal. App. 4th at 1416; <u>see also</u> <u>Andrews v. Foster Wheeler</u>

26  <u>LLC</u>, 138 Cal. App. 4th 96, 102 (2006) ("To ultimately prevail in their underlying

27  claim, plaintiffs would need to establish that [the plaintiff]'s exposure to a product

28  attributable to [the defendant] was to a reasonable medical probability a substantial

factor in contributing to any asbestos-related disease suffered by him.").

## I.    Exposure to Crane Co. Products

A threshold issue in asbestos litigation is exposure to the defendant's product, and it is plaintiff's burden to demonstrate exposure. McGonnell v. Kaiser Gypsum Co., 98 Cal. App. 4th 1098, 1103 (2002) ("If there has been no exposure, there is no causation."). While plaintiffs may demonstrate exposure with circumstantial evidence, see Lineaweaver v. Plant Insulation Co., 31 Cal. App. 4th 1409, 1419-20 (1995) (finding plaintiff Lineweaver's circumstantial evidence "sufficient to support a reasonable inference of exposure"), the circumstantial evidence must be "of sufficient weight to support a reasonable inference of causation." Dumin v. Owens-Corning Fiberglas Corp., 28 Cal. App. 4th 650, 656 (1994) (finding circumstantial evidence required a "stream of conjecture and surmise" to support a finding of exposure to defendant's products); see also Lineaweaver, 31 Cal. App. 4th at 1421-22 (finding plaintiff King's circumstantial evidence created "a dwindling stream of probabilities that narrow into conjecture").

Defendant Crane Co. argues discovery has provided no evidence that Decedent encountered asbestos supplied by Crane Co. while working on the USS Fort Marion. (Dkt. No. 195-1 at 1.) According to Crane Co., "Plaintiff was unable to identify a single specific document evidencing that Decedent was exposed to asbestos for which Crane was liable." (Dkt. No. 195-1 at 3.) Crane Co. further argues that Decedent, as the only witness with percipient knowledge about the case, did not know much about the valves alleged to be from Crane Co.; did not know whether the parts he replaced were original to the ship or previously replaced; and did not order or have personal knowledge regarding the source of any replacement parts. (Dkt. No. 195-1 at 3-5.)

In opposition, Plaintiff argues that she has proffered adequate evidence that Decedent was exposed to Crane Co.'s originally-installed asbestos containing products to raise a triable issue of material fact. (Dkt. No. 207 at 2-3.) In particular,

Plaintiff points to Decedent's testimony that he knew that a portion of the Crane Co. valves from which he removed internal packing and gasket material were "new," because he had observed that performing any work disassembling valves left tell-tale markings on those valves. (Dkt. No. 207 at 3.)

The Court finds Plaintiff's proffered evidence sufficient to raise a triable issue of material fact as to whether Decedent was exposed to asbestos-containing products made by Crane Co. In particular, Plaintiff has introduced declarations and deposition testimony that Decedent worked on steam valves embossed with the name "Crane" while on the USS Fort Marion, (Dkt. No. 207-2, "Brantley Depo." at 629, 1280); that Decedent's work on steam valves typically involved disassembling the valves in order to access the internal asbestos-containing bonnet gasket and packing, (id. at 26-33); that some of the Crane Co. valves serviced by Decedent were "new,"[3] (id. at 1274-75); that Crane Co. valves contained asbestos packing and gasket material during the 1960s, (Dkt. No. 207-3, "Holstein Decl." ¶ 30) (citing Crane Co. interrogatory responses); and that asbestos was used in Crane Co. steam valves due to the state of scientific knowledge at that time and the high temperatures steam valves needed to withstand. (Id. ¶ 31.)

While much of Decedent's testimony provides circumstantial rather than direct evidence, Decedent's testimony establishes an eyewitness account corroborated by expert testimony and Crane Co. admissions that may support a reasonable inference that Decedent was exposed to Crane Co. asbestos-containing products. See Lineaweaver, 31 Cal. App. 4th at 1419-20. In particular, the Court finds that Plaintiff has introduced Decedent's testimony that he recalled seeing "Crane" embossed directly on the valves themselves, (Brantley Depo. at 629, 1280),

---

[3]The Court notes that Decedent and Plaintiff's counsel appear to define "new" valves as valves that still included the original packing material installed by the manufacturer of the valve (i.e. a valve for which the packing material had not been previously replaced by Decedent or another boilerman), regardless of whether the valve itself was originally installed on the USS Fort Marion or subsequently installed as a replacement valve on the USS Fort Marion. (See Dkt. No. 207 at 3; Brantley Depo. at 1274-75.)

1   as well as Crane Co.'s admission that many of its valves "bore the name 'Crane,'

2   marked directly on the valve," (Dkt. No. 207-5, Holstein Decl. Ex. 4 at 12). The

3   Court declines to weigh Decedent's direct testimony or engage in credibility

4   determinations at summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S.

5   242, 255 (1986). In addition, Plaintiff has introduced evidence that Crane Co. has

6   been "a prominent manufacturer of industrial equipment, particularly valves;" has

7   been "one of the market leaders in their field;" and "has sold a significant number of

8   valves to the United States Navy." (Dkt. No. 207-3, Holstein Decl. ¶ 30.) As such,

9   the Court finds Plaintiff's evidence related to Decedent's exposure to Crane Co.

10  products supports a reasonable inference of exposure. Lineaweaver, 31 Cal. App.

11  4th at 1420 (distinguishing plaintiff's case from Dumin, 28 Cal. App. 4th at 650,

12  because the plaintiff had "established that defendant's product was definitely at

13  [plaintiff's] work site and that it was sufficiently prevalent to warrant an inference

14  that plaintiff was exposed to it during his more than 30 years of working with and

15  around asbestos throughout the refinery."). Accordingly, the Court DENIES

16  Defendant Crane Co.'s motion for summary judgment based on claims that Plaintiff

17  is unable to demonstrate exposure to Crane Co. asbestos-containing products.

18  **II.    Punitive Damages**

19       Generally, under California law, punitive damages may be awarded only

20  when the trier of fact finds, by clear and convincing evidence, that the defendant

21  acted with malice, fraud, or oppression. Cal. Civ. Code § 3294(a). "In the usual

22  case, the question of whether the defendant's conduct will support an award of

23  punitive damages is for the trier of fact, since the degree of punishment depends on

24  the peculiar circumstances of each case." Spinks v. Equity Residential Briarwood

25  Apartments, 171 Cal. App. 4th 1004, 1053 (2009) (internal quotations and citation

26  omitted); see also Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 821 (1979)

27  ("Determinations related to [the] assessment of punitive damages have traditionally

28  been left to the discretion of the jury."); Amadeo v. Principal Mut. Life Ins. Co., 290

1   F.3d 1152, 1165 (9th Cir. 2002) (same). Summary judgment on a claim for punitive

2   damages is proper only "when no reasonable jury could find the plaintiff's evidence

3   to be clear and convincing proof of malice, fraud or oppression." See Hoch v.

4   Allied–Signal, Inc., 24 Cal. App. 4th 48, 60-61 (1994).

5       Defendant argues Plaintiff has set forth no evidence that Crane Co. knew of

6   the hazards of asbestos at the time of, or before, Mr. Brantley's alleged exposure to

7   a Crane Co. product to support a claim for punitive damages. (Dkt. No. 195-1 at 8.)

8   In response, Plaintiff argues that she has "extensive evidence that Crane Co.'s

9   conduct has risen to the standard of 'conscious disregard' of others' health and

10  safety sufficient to create a triable issue of fact as to the availability of punitive

11  damages." (Dkt. No. 207 at 16.) According to Plaintiff, "Crane concealed the known

12  hazards of its products from [Decedent] and engaged in 'despicable conduct' which

13  [was] carried on . . . with a willful and conscious disregard of the rights or safety of

14  others." (Dkt. No. 207 at 24) (citing Cal. Civ. Code § 3294).[4]

15      Under the punitive damages statute, malice is defined as "despicable conduct

16  which is carried on by the defendant with a willful and conscious disregard of the

17  rights or safety of others." Cal. Civ. Code, § 3294(c)(1). "To establish conscious

18  disregard, the plaintiff must show 'that the defendant was aware of the probable

19  dangerous consequences of his conduct, and that he wilfully and deliberately failed

20  to avoid those consequences.' " Hoch, 24 Cal. App. 4th at 61 (citing Taylor v.

21  Superior Court, 24 Cal. 3d 890, 895-96 (1979); Mock v. Michigan Millers Mutual

22  Ins. Co., 4 Cal. App. 4th 306, 329 (1992)).

23      Notwithstanding Crane Co.'s assertion to the contrary, the Court finds that

24  Plaintiff has offered substantial evidence to raise a triable issue of material fact

25  regarding punitive damages. Specifically, Plaintiff submits evidence that Crane Co.

26  _____

27      [4]The Court notes that Plaintiff makes several references to "Mr. Willis" in her
    opposition to Crane Co.'s motion for summary judgment. (Dkt. No. 207 at 21, 22, 24)
28  The Court notes that Mr. Willis is a plaintiff in a case before another Judge in this
    district.

knew that use of its valves required periodic replacement of the internal asbestos-containing packing and gaskets; that Crane Co. managers and engineers were members of trade organizations that regularly discussed asbestos hazards beginning in the 1930s; that Crane Co. has admitted that Crane Co. management knew that "breathing asbestos caused disabling and fatal disease"; and that Crane Co. did not place warnings on valves despite this knowledge, though it was feasible to do so. (Dkt. No. 207-18.) Accordingly, the Court DENIES Crane Co.'s motion for partial summary judgment on the issue of Plaintiff's entitlement to punitive damages.

However, Crane Co. claims that judges overseeing federal asbestos MDL No. 875 have long severed plaintiffs' claims for punitive damages prior to remanding asbestos cases for trial. (Dkt. No. 195-1 at 20.) Crane Co. requests that this Court similarly sever the issue of punitive damages in the event summary adjudication is not granted. (Id.) Plaintiff has not opposed this request. Finding good cause therefor, the Court GRANTS Crane Co.'s request to sever the issue of punitive damages for trial. See Rapid Displays Inc. v. Gorder, 155 Fed. Appx. 962 (9th Cir. 2005) (unpublished opinion) (approving district court's grant of an unopposed motion to bifurcate trial into liability and punitive damages phases, but remanding where the district court failed to proceed with the attorney's fees and punitive damages phase of trial).

## CONCLUSION AND ORDER

Based on the foregoing, the Court hereby **DENIES** Defendant Crane Co.'s motion for summary judgment, but **GRANTS** Defendant Crane Co.'s request to sever the issue of punitive damages for trial. (Dkt. No. 195.)

**IT IS SO ORDERED.**

DATED:  August 18, 2014

HON. GONZALO P. CURIEL
United States District Judge